Allen Hyman (California State Bar No. 73371)
LAW OFFICES OF ALLEN HYMAN
10737 Riverside Drive
North Hollywood, CA 91602
Phone: (818) 763-6289
Fax: (818) 763-4676
E-mail: lawoffah@aol.com

Brian S. Levenson  * *Pro Hac Vice Pending*
SCHWARTZ, PONTERIO & LEVENSON, PLLC
134 West 29th Street, Suite 1006
New York, New York 10001
Phone: (212) 714-1200
Fax: (212) 714-1264
E-mail: blevenson@splaw.us

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAY HENDERSON MUSIC CO., INC.,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE LLC, VALLEYARM DIGITAL LIMITED, LENANDES LTD, GIACOMO VERANI, and LIMITLESS INT. RECORDINGS,<br><br>Defendants. | **COMPLAINT FOR COPYRIGHT INFRINGEMENT AND DEMAND FOR JURY TRIAL** |

## Jurisdiction

1.     The Court has jurisdiction over the subject matter of this action against Defendants Google LLC, Valleyarm Digital Limited, Lenandes Ltd, Giacomo Verani, and Limitless Int. Recordings pursuant to 28 U.S.C. § 1338(a) because this is an action for copyright infringement arising under the Copyright Act of 1976, 17 U.S.C. §§ 101, 106, 115, 501, 602 *et seq.*

**Introduction**

2.    Plaintiff is the legal and/or beneficial copyright owner of musical works authored by Ray Henderson one of the premier composers of American music.

3.    Ray Henderson wrote or co-wrote some of the most popular modern songs, including many seminal works in the American songbook, including *Bye Bye Blackbird, Has Anybody Seen My Girl? (a/k/a "Five Foot Two, Eyes of Blue"), I'm Sitting on Top of the World, Life Is Just a Bowl of Cherries, Varsity Drag, The Best Things in Life Are Free, Button Up Your Overcoat* and *Animal Crackers in My Soup*.

4.    The Composition Chart annexed as Exhibit A provides a list of Plaintiff's copyrighted compositions at issue in this case (the "Subject Compositions").

5.    The works of Henderson have been recorded by the most prominent jazz and popular artists of all time, including Aretha Franklin, Frank Sinatra, Ray Charles, Bing Crosby, Judy Garland, Dean Martin, Fred Astaire, John Coltrane, Louis Armstrong, Miles Davis, and Sarah Vaughan to name only a few. These monumental works of art are, quite literally, national treasures.

6.    These and other recordings of Plaintiff's copyrighted musical works have been pirated by the Defendants in this case. Defendants are all players in the digital music business that participate in, and jointly profit from, making digital phonorecord deliveries (*i.e.*, downloads) of pirated recordings of the Subject Compositions.

7.    Digital phonorecord deliveries of musical recordings constitute a reproduction and distribution of the musical work embodied in the digital recording and require a license from the copyright owner of the musical composition, sometimes referred to as a "mechanical license."

8.    Defendants have failed to obtain any license that would authorize them to reproduce, distribute, or sell the recordings of the Subject Compositions identified on Exhibit B and, as a result, Defendants have infringed Plaintiff's exclusive rights of

reproduction and distribution of the Subject Compositions, under 17 U.S.C. §§ 106(1) and 106(3).

9.     Further, the activity of making digital phonorecord deliveries of pirated recordings of the Subject Compositions does not qualify for a compulsory license or as a covered activity under Section 115 of the Copyright Act.

10.     A list of the pirated recordings of the Subject Compositions that Defendants have reproduced and distributed without authorization, including by making digital phonorecord deliveries, thus far identified, is set forth in the Infringement Chart annexed as Exhibit B.

11.     All the recordings identified on Exhibit B are pirated. Plaintiff has thus far identified over 50 pirated recordings of the Subject Compositions that have been separately reproduced and distributed as digital phonorecord deliveries by Defendants as set forth in the Infringement Chart annexed as Exhibit B. Defendants have infringed these works in a concerted and distinct distribution chain.

### Defendants' Piracy is Massive and Flagrant

12.     The scope and flagrant nature of Defendants' piracy cannot be understated. It is obvious that the recordings listed in Exhibit B are pirated by virtue of the scope of the Limitless catalog, the replication of the original album artwork (while removing the original label logos), and the continued distribution of legitimate versions of the recordings by the rightful record label owners on Google Play.

13.     Limitless, which has no web presence and no listing on Discogs.com, is selling recordings by virtually every well-known recording artist from the 1930s through the 1960s, including Frank Sinatra, Duke Ellington, Ella Fitzgerald, Miles Davis, Louis Armstrong, Mel Torme, Ray Charles, Sarah Vaughan, and Judy Garland.

14.    In addition, strong evidence of the piracy can be gleaned directly from the Google Play store from the comparison of the bootlegged Limitless catalog entries side-by-side with legal recordings being sold by legitimate record labels.

15.    Album cover art has been an essential part of the packaging and marketing and labels have taken great care to create album artwork commensurate with the music it accompanied. Not so with Limitless, which has often either stolen the album art and music wholesale or employed stock artwork for its bootlegged albums.

16.    Invariably, Limitless has simply applied a silver border with its name written around the original release artwork and obscuring the original label logo as exemplified by the following screenshots comparing the Limitless release with the original:





17.    In many instances, Google Play is selling the legitimate release by the original label side by side with Limitless's bootlegged copy. For example, in 1957, Columbia released a Miles Davis recording of *Bye Bye Blackbird* on his album, <u>Round Midnight</u>, widely recognized by jazz critics as "a landmark album in hard bop and one of the greatest jazz albums of all time."  Columbia continues to sell the album on

Google Play, but now in direct competition with Defendants who have pirated the original recording and artwork, obscured the Columbia logo, and are selling their pirated copy at about half the price, as evidenced by the following Google Play screenshots:

 

https://play.google.com/store/search?q=miles%20davis%20bye%20bye%20blackbird%20%27Round%20About%20Midnight&c=music  (11/20/2019)

18.    Similarly, in 1957, Capitol Records released the album <u>Alone</u>, by Judy Garland, which included her recording of the Henderson composition *Just A Memory*. Capitol sells the recording on Google Play in direct competition with Defendants who, again, have appropriated album artwork (eliminating the Capitol logo) and are selling the bootleg for half the price as evidenced by the following Google Play screenshot:

 

https://play.google.com/store/search?q=alone%20just%20a%20memory%20judy%20garland&c=music  (12/4/2019)

**COMPLAINT FOR COPYRIGHT INFRINGEMENT AND DEMAND FOR JURY TRIAL**

19.    The scope and scale of Defendants' piracy operation cannot be understated. Defendants have, on occasion, flagrantly bootlegged entire artist or label catalogs. For example, as shown in the following screenshots, Defendants claim to have compiled: (a) The Complete R. Burns Sessions of Carmen McRae; (b) The Complete Verve Tal Farlow Sessions; (c) The Complete Interpretations Sessions by the Stan Getz Quintet; and (d) The Complete Okeh & Brunswick recordings of the Bix Beiderbecke, Frank Trumbauer & Jack Teagarden Sessions:

  

20.    In addition, for older recordings originally released before albums were popular, Defendants have simply compiled the singles and applied the Limitless border around a simple background or a stock photograph of the artist, as illustrated by the following screenshots:

   

21.    In addition to the pirated recordings of Plaintiffs' compositions, Defendants have distributed a broad and deep catalog of thousands of other pirated recordings through the Google Play store, including many entire albums of seminal musical works.

22.   For example, the Limitless catalog available in the Google Play store includes the following seminal albums:

a.   Elvis Presley's debut album, <u>Elvis Presley</u>:



b.   <u>Surfin' USA,</u> by The Beach Boys:



c.   James Brown's debut album, <u>Please, Please, Please</u>:



d.  Bob Dylan's debut studio album, <u>Bob Dylan</u>:



e.  Roy Orbison's <u>Crying</u>:



23.   Google's own customers have noticed that the Limitless albums are pirated and have alerted Google to the piracy, but Google has not taken any action. For example, Google is selling a legitimate version of the Bob Dylan album <u>The Freewheelin' Bob Dylan</u>, released by Sony side by side with the Limitless bootleg:



8

24.    The Limitless bootleg catalog page on Google Play has elicited comments from Google users noting the poor quality of the recording and asking, "Not on Sony? Then why is Google streaming this bootleg?":



25.    All of this should have made it obvious that Limitless is operating a huge music piracy operation. Valleyarm and Google chose to ignore the evidence of piracy and to participate in the infringement on a massive scale.

26.    To put this case in context, in 2007, Jammie Thomas-Rasset, a single mother of four in Brainerd, Minnesota, was found liable, after three separate jury trials, for copyright infringement for using file sharing software that enabled the unauthorized downloading and distribution of 24 recordings by the Goo Goo Dolls and Def Leppard, among others. The juries awarded statutory damages in all three trials of up to $80,000 per infringement. The Eighth Circuit Court of Appeals ultimately affirmed statutory damages in the amount of $9,250 for each infringed recording, for a total award of $222,000. Ms. Thomas-Rassett declared bankruptcy as she had "no other option."

27.    In 2009, Joel Tenenbaum, a Massachusetts college student, who also used file-sharing software that permitted others to download 30 recordings by Limp Bizkit and Blink-182, was found liable and the jury awarded statutory damages of $22,500 per recording, for a judgment that totaled $675,000 forcing Mr. Tenenbaum to file for Chapter 7 bankruptcy.

28.     Unlike Ms. Thomas-Rassett and Mr. Tenenbaum who were not alleged to have sold their infringing recordings or profited from their conduct, Defendants in this case have engaged in massive music piracy operation for the purpose of generating profits from their sales of pirated recordings and by other means.

29.     The copyright infringement operation detailed in this Complaint is only the latest in a long line of piracy schemes that have plagued composers, publishers, and record labels since the inception of the music industry over 100 years ago, when the perforated rolls used by player pianos to perform musical works were pirated. See *Aeolian Co. v. Royal Music Co.*, 196 F. 926 (W.D.N.Y. 1912).

30.     As the technology employed by the music industry to reproduce musical works advanced, bootlegging efforts by music pirates kept pace. In the 1960s and 1970s, organized criminal enterprises engaged in record and tape piracy operations on a scale that is dwarfed by the infringing conduct explained herein. Like the Defendants in this case, the "tape pirates" and "record pirates" of years past unlawfully duplicated popular pre-existing recordings, and then claimed their liability was limited by the compulsory license provision of the 1909 Copyright Act, § 1(e).

31.     The landmark case *Duchess Music Corp. v. Stern*, 458 F.2d 1305 (9th Cir. 1972) settled the issue as to whether tape pirates could limit their liability for piracy under the compulsory license provision of the 1909 Copyright Act. In *Duchess*, the defendant tape pirate engaged in the same conduct identified in this Complaint, and claimed her conduct was lawful because the compulsory license provision of the Copyright Act authorized the reproduction and distribution of the musical works embodied on the recordings she pirated. The Ninth Circuit rejected the argument, stating, "She may not continue her piracy under the flag of compulsory licensing." The *Duchess* court concluded that the tape pirates' activity was ineligible for a compulsory license and that reproduction of a musical composition on a pirated

recording infringed the copyright in the composition, even when a compulsory license was claimed.[1]

32.    The holding in *Duchess* was codified when the Copyright Act was revised in 1976. The statutory bar against compulsory licensing of pirated recordings continues in the recent amendments to Section 115 of the Copyright Act, which provides that reproduction and distribution of pirated sound recordings is not a covered activity under Section 115 and is ineligible for a compulsory license.

33.    Defendants are nothing more than modern tape and their conduct constitutes willful copyright infringement of the Subject Compositions in violation of the United States Copyright Act [17 U.S.C. §§ 101, 106, 115, 501, 602 *et seq.*] (the "Copyright Act").

### *Ray Henderson Music Co. Inc.*

34.    Plaintiff Ray Henderson Music Co. Inc. is a Delaware corporation with a principal place of business in Maryland.

### *Google*

35.    Defendant Google LLC ("Google") is a limited liability company organized under the laws of the State of Delaware with a place of business at 1600 Amphitheatre Parkway, Mountain View, California.

36.    Google has owned and operated a digital music store under various names since 2011, including "Google Music" at launch, and currently, "Google Play" that sells permanent downloads. Google Play currently has a catalog of over 40 million tracks for sale as permanent downloads in the U.S.

---

[1] The criminal conduct of "tape pirates" became a priority of the Attorney General of the United States, Edward H. Levi, in 1975 when the Justice Department determined that decisions reached by four Circuit Courts of Appeals, including the Ninth Circuit in *Duchess*, rendered tape pirates criminally liable even where the statutory royalty was tendered. See *Heilman v. Levi*, 391 F.Supp. 1106 (E.D.Wisc. 1975). Criminal copyright infringement sentences continue to this day. See *Matter of Zaragoza-Vaquero*, 26 I&N Dec. 814 (BIA 2016)(defendant sentenced to 33 months in prison and ordered to be removed from the United States for selling bootleg copies of music CDs at a Florida flea market, as a crime involving moral turpitude).

37.   Google specifically selected and contracted with Valleyarm and/or Limitless to provide the Limitless digital music catalog to be sold in its Google Play store on negotiated financial terms.

38.   Google received all of the recordings of the Subject Compositions identified on Exhibit B from Limitless and/or Valleyarm. Google then reproduced, distributed and sold these pirated recordings of the Subject Compositions in Google Play, without any licenses, as permanent downloads among other types of digital phonorecord deliveries identified herein.

### *Valleyarm*

39.   Upon information and belief, Defendant Valleyarm Digital Limited ("Valleyarm") is a business entity organized under the laws of Australia with a place of business at Suite 1.09, 838 Collins Street, Docklands, VIC 3008, Australia.

40.   Valleyarm has distributed, and continues to distibute, digital music to the Google Play store and has delivered thousands of recordings to Google Play for sale throughout the U.S.

41.   Valleyarm specifically selected and contracted with Limitless to provide the Limitless digital music catalog to be sold in the Google Play store on negotiated financial terms.

42.   At Limitless's direction, Valleyarm unlawfully reproduced all of the recordings of the Subject Compositions identified on Exhibit B, distributed them to Google, and unlawfully authorized Google to make digital phonorecord deliveries in the Google Play store, as specifically set forth in Exhibit B.

### *Limitless*

43.   Upon information and belief, Defendant Lenandes Ltd ("Lenandes") is a company organized under the laws of the United Kingdom with a registered office address at 10 Philpot Lane, London, England, EC3M 8AA.

44.   Upon information and belief, Defendant Giacomo Verani ("Verani") is the sole director and shareholder of Lenandes and controls its operations.

45.     Upon information and belief, Defendant Limitless Int. Recordings is a business entity whose country of origin and business address are unknown to Plaintiffs and is controlled by Verani and/or is the trade name under which Verani and/or Lenandes are operating. Lenandes, Verani, and Limitless Int. Recordings are united in interest and shall be referred to, collectively, as "Limitless".

46.     Upon information and belief, Limitless directly pirated pre-existing recordings embodying the Subject Compositions identified on Exhibit B, distributed them to Valleyarm and/or Google, unlawfully authorized Valleyarm's distribution and delivery of the pirated recordings to Google for sale in its Google Play store, and unlawfully authorized Valleyarm and Google's making of digital phonorecord deliveries in Google's Google Play store as specifically set forth in the annexed Exhibit B.

47.     Upon information and belief, Limitless is simply duplicating recordings of the Subject Compositions made by others without permission and authorizing Valleyarm and Google to sell reproductions of the pirated copies for profit in Google Play.

### Jurisdiction, Venue and Joinder

48.     This Court has personal jurisdiction over Defendants. Google has its principal place of business in this district in California and all Defendants have purposefully availed or directed their infringing activities in California.

49.     Further, Plaintiff's copyright infringement claims arise out of (a) the reproduction and distribution of pirated recordings of the Subject Compositions listed in Exhibit B, occurring in California, directly by Defendants and/or at their purposeful direction and availment, including the sale of pirated recordings of Subject Compositions to California residents; or (b) transactions consummated within California between Valleyarm and Google, concerning reproduction, distribution and delivery of the pirated recordings of the Subject Compositions.

50. Limitless intentionally directed its distributor, Valleyarm, to distribute the pirated recordings to Google in California for sale in its Google Play store.

51. Valleyarm and Limitless intentionally distributed and delivered the pirated recordings of the Subject Compositions identified in Exhibit B to Google, and unlawfully authorized Google to reproduce these pirated recordings of the Subject Compositions in its Google Play store and to sell permanent downloads to California consumers.

52. Venue is proper in this District pursuant to 28 U.S.C §§ 1391(b), 1391(c) and 1400(a) because Google has its principal place of business here. In addition, Defendants are subject to personal jurisdiction in this Judicial District and have committed unlawful acts of infringement in this Judicial District.

53. Joinder of Limitless, Valleyarm and Google is proper under Fed. R. Civ. P. 20 because Defendants are jointly and severally liable as members of a distinct distribution chain for the acts of copyright infringement identified herein.

**Ray Henderson**

54. Ray Henderson (1896-1970) was born in Buffalo, New York and studied piano and composition at the Chicago Conservatory where he cultivated a melodic style that helped him write enduring American standards, such as *Life Is Just A Bowl of Cherries*, *Bye Bye Blackbird*, and *Five Foot Two Eyes Of Blue*.

55. Henderson was part of the most successful songwriting team of the late 1920s and 1930s, Henderson, Brown and DeSylva. The threesome created several memorable hits from the era including *It All Depends On You*, *Broken Hearted*, and *If I Had A Talking Picture of You.*

56. Henderson contributed to several Broadway shows throughout his career including Manhattan Mary, George White's Scandals, Good News, Hold Everything, Three Cheers, Follow Through, Flying High, Hot-Cha, Strike Me Pink, Ziegfeld Follies of 1943 and Say When. In 1956, Henderson's songwriting life was the subject of a film called "The Best Things In Life Are Free" starring Gordon MacRae, Dan

Dailey and Ernest Borgnine as the real-life songwriting team of Buddy DeSylva, Lew Brown and Ray Henderson.



57.    Henderson was among those selected for the inaugural induction into the Songwriters Hall of Fame in 1970.

### Ray Henderson Music Co. Inc.

58.    Ray Henderson Music Co. Inc. is a Delaware corporation formed by Ray Henderson's children.  Ray Henderson Music Co. Inc. acquired the copyrights in the respective Subject Compositions by assignment from his children who acquired the copyrights by termination notices timely served and filed with U.S. Copyright Office under Section 304 of the Copyright Act of 1976.

59.    Plaintiff Ray Henderson Music Co. Inc. is the legal owner of the U.S. copyright in certain of the Subject Compositions as identified in Exhibit A, along with all causes of action.

### The Subject Compositions

60.    Plaintiff is the owner of the musical compositions listed in the Composition Chart annexed as Exhibit A (collectively, the "Subject Compositions") that are the subject of this action.

61.    The copyrights for all the Subject Compositions have been registered and renewed with the U.S. Copyright Office, and each Subject Composition is the subject

of a valid U.S. copyright. The Composition Chart annexed as Exhibit A identifies the copyright registration numbers for each of the Subject Compositions.

62.     Plaintiff is the owner of a share in each of the Subject Compositions in the percentages listed on Exhibit A.

63.     As discussed more fully below, the Defendants have infringed, and are continuing to infringe, the copyright in each of the Subject Compositions by willfully reproducing and distributing them without a license.

**Background**

64.     Before digital music distribution, recorded music was physically distributed through brick-and-mortar stores that were confined by the limitations of shelf space. Recording artists signed exclusive recording contracts with record labels in order to have their records pressed and distributed in national record stores.

65.     It is hard to imagine that a person walking into Tower Records, off the street, with arms full of CDs and vinyl records and claiming to be the record label for Frank Sinatra, Louis Armstrong and Ella Fitzgerald, could succeed in having that store sell their pirated copies directly next to the same albums released by legendary record labels, Capitol, RCA and Columbia, and at a lower price.

66.     Yet, this exact practice occurs every day in the digital music business, where there is unlimited digital shelf space (for example, there are more than 40 million recordings in the Google Play store) and a complete willingness by the digital music stores to seek popular and iconic recordings from any source, legitimate or not, provided they participate in sharing the proceeds.

67.     The iconic status of the pirated recordings of the Subject Compositions at issue in this case cannot be overstated. Any list of the most popular singers and musicians of any period between 1930 and 1970 would be replete with the artists who have recorded Plaintiff's musical works, some of them multiple times.

68.     All the recordings on the Infringement Chart (Exh. B) embodying the Subject Compositions are pirated copies, or "bootlegs." Defendants' digital

phonorecord deliveries of these pirated copies were all made without authorization from the copyright owners of the sound recordings or those who originally "fixed" them as required by Section 115 (discussed below), and the copyright owners of the Subject Compositions.

69.     Defendants all generate illicit revenue for themselves when these and other pirated copies are sold or distributed. Plaintiff has not authorized any reproduction or distribution of these pirate recordings of the Subject Compositions (or any identified on Exhibit B) and it is an infringement for which all the Defendants are jointly and severally liable.

### The Pirated Recordings

70.     All of the recordings identified in Exhibit B are pirated. Defendants have taken recordings of the Subject Compositions – in which they hold no rights – and reproduced and distributed pirated copies of them to the public, for profit, without authorization.

71.     Virtually all of the recordings at issue in this case were originally made between 1923 and 1972.

72.     Since Limitless did not originally "fix" any of the relevant recordings, the only way for it to acquire the rights to duplicate and distribute them would be to purchase or license rights in these recordings.

73.     Upon information and belief, Limitless never acquired permission or the rights to reproduce or distribute any of these recordings from any person who lawfully fixed them or from the owner of the copyright in the sound recording. Limitless is simply duplicating previously released recordings and selling them as if they were the rightful owner. Valleyarm and Google are duplicating Limitless's pirated sound recordings of the Subject Compositions and selling the pirated copies for profit.

### Defendants Have Infringed the Subject Compositions

74.     Section 115 of the Copyright Act expressly excludes Defendants' reproduction and distribution of pirated recordings of the Subject Compositions as a

covered activity eligible for a compulsory license under Section 115 and Defendants have failed to obtain any licenses for the Subject Compositions that authorize such activity.

75.     The Infringement Chart annexed as Exhibit B sets forth (1) each pirated recording of the Subject Compositions within the Limitless, Valleyarm, Google distribution chain thus far identified by Plaintiff that these Defendants have reproduced, distributed, and/or made available for digital phonorecord deliveries in Google's Google Play store without authorization.

76.     The various types of unauthorized reproductions, distributions, and/or digital phonorecord delivery configurations of each of the pirated recordings of the Subject Compositions made and/or authorized by Defendants are discussed briefly below.

### *Permanent Downloads*

77.     Permanent download means a digital transmission of a sound recording of a musical work in the form of a download, where such sound recording is accessible for listening without restriction as to the amount of time or number of times it may be accessed.

78.     Google has made available, reproduced, and distributed permanent downloads of the recordings of the Subject Compositions listed on Exhibit B to its customers.

79.     Google was unlawfully authorized and directed to do so by Limitless and/or Valleyarm.

80.     Reproducing or distributing permanent downloads of recordings of the Subject Compositions require licenses from the copyright owners of the Subject Compositions and all of the Defendants failed to obtain such licenses for each entry on the Infringement Chart at Exhibit B.

81.     The reproduction and distribution of permanent downloads of recordings of the Subject Compositions by Google, and the authorization of this

activity by Limitless and Valleyarm, infringes Plaintiff's exclusive reproduction and distribution rights under 17 U.S.C. § 106(1) and (3).

### *Server Copies*

82.     Google has reproduced at least one copy of each recording of the Subject Compositions identified on Exhibit B on its servers for sale of permanent downloads in its Google Play store as server copies.

83.     Google was unlawfully authorized to engage in this activity by Limitless and/or Valleyarm.

84.     Making server copies of any of the recordings embodying the Subject Compositions identified on Exhibit B requires a license from the copyright owners of the Subject Compositions.

85.      All Defendants failed to obtain such licenses for each of the recordings embodying the Subject Compositions identified on Exhibit B.

86.     Google's reproduction of server copies of pirated recordings of the Subject Compositions for sale of permanent downloads in its Google Play store, and authorization of this activity by Limitless and Valleyarm, as well the distribution of the server copies of pirated recordings of Subject Composition to Google, by Limitless and/or Valleyarm, infringes Plaintiff's exclusive reproduction and distribution rights under 17 U.S.C. § 106(1) and (3).

### *Making Available*

87.     Defendants have made and continue to make available, or authorize making available, permanent downloads of the recordings of the Subject Compositions identified on Exhibit B to the public by delivering, uploading and/or offering them as permanent downloads in Google Play.

88.     The Defendants' making available recordings of the Subject Compositions identified on Exhibit B for permanent downloads, and authorization of this activity, by Limitless and/or Valleyarm, requires a license from the copyright owners of the Subject Compositions

89.     Defendants failed to obtain such licenses for each recording of the Subject Compositions identified on Exhibit B and have thereby infringed Plaintiff's exclusive distribution rights under 17 U.S.C. § 106(3) as a "deemed distribution." *A&M Records v. Napster*, 239 F.3d 1004, 1014 (9th Cir. 2001); *Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701 718–19 (9th Cir. 2007).

### *Importation*

90.     Importation of phonorecords of a musical composition acquired outside the U.S. requires authorization of the owner of the copyright of the musical composition under Section 602 of the Copyright Act. Importation without the authority of the owner of the copyright in that composition is an infringement of the exclusive distribution rights under 17 U.S.C. § 106(3).

91.     Defendants have engaged in the unauthorized importation of phonorecords of the Subject Compositions, acquired outside the U.S., by digital phonorecord deliveries, or other means.

92.     Limitless and Valleyarm are located outside the United States. Valleyarm, at the direction of Limitless, and Google have engaged in the importation of phonorecords of recording embodying the Subject Compositions listed on Exhibit B into the United States by digital phonorecord delivery, or other delivery of phonorecords.

93.     None of the Defendants obtained importation authorization from the U.S. copyright owners of the Subject Compositions.

94.     Defendants' respective importations of phonorecords embodying the Subject Compositions identified on Exhibit B infringe Plaintiff's exclusive importation rights under 17 U.S.C. § 602 and distribution rights under 17 U.S.C. § 106(3).

### Willfulness

95.     The infringing conduct of all of the Defendants is willful. Limitless knows that it does not have authority to reproduce, distribute or for importation of the

recordings of the Subject Compositions listed on Exhibit B, or to authorize these actions by Valleyarm and Google. Limitless has pirated thousands of recordings and sold them in the United States through Google Play.

96.     Similarly, Valleyarm did not perform any investigation or due diligence to confirm that Limitless had authorization to reproduce, distribute, make, or authorize the making of digital phonorecord deliveries, or the importation, of the recordings of the Subject Compositions identified on Exhibit B.

97.     In fact, Valleyarm has had knowledge of the infringing conduct of Limitless and has nevertheless continued to make digital phonorecord deliveries and other reproductions and distributions of the pirated recordings of the Subject Compositions that Limitless provides without any licenses, and/or were recklessly indifferent or willfully blind to their own infringing conduct.

98.     Further, Google has had knowledge of its own infringing conduct and that of Limitless and Valleyarm and has continued to work with them and make digital phonorecord deliveries and other reproductions and distributions of the pirated recordings of the Subject Compositions that Limitless and Valleyarm provide and/or were recklessly indifferent or willfully blind to their own infringing conduct.

99.     Finally, Google has willfully failed to employ adequate human resources, screening mechanisms, or use of digital fingerprinting technology to detect unlawfully duplicated recordings in their stores that it routinely uses for other services, for example, YouTube, or Google Play's "scan and match" service.

100.   In addition to the recordings identified on Exhibit B, there are believed to be many other pirated recordings of the Subject Compositions that Defendants have reproduced and distributed without authorization that Plaintiff has not yet identified or that are no longer available on Google Play.

101.   The infringement by Defendants of each Subject Composition on each pirated recording identified in the Infringement Chart at Exhibit B began as of the date of upload, receipt, delivery to and/or reproduction by Google of server copies of

the pirated recordings of the Subject Compositions designated for reproduction and distribution by Limitless and/or Valleyarm in Google Play and continues to the present. The infringements identified in Exhibit B all occurred within three years of filing this Complaint.

102.   By their conduct described above, Defendants have infringed and are continuing to infringe Plaintiff's copyrights on a regular basis in violation of 17 U.S.C. §§ 101, 106, 115, 501, 602 *et seq*.

103.   As a direct and proximate result of Defendants' infringement, Plaintiff is entitled to elect either an award of actual damages, including Defendants' profits, or statutory damages under 17 U.S.C. § 504(c).

104.   Defendants' infringement is and has been willful, intentional, purposeful and with willful disregard of Plaintiff's rights. Anything less than maximum statutory damage awards would encourage infringement, amount to a slap on the wrist, and reward Defendants for their willful infringement on a grand scale.

105.   Plaintiff is also entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

106.   Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction prohibiting Defendants from reproducing, distributing, importing and selling the pirated recordings of the Subject Compositions without license or authorization in violation of the Copyright Act.

### Claim for Copyright Infringement Against
### Google, Valleyarm, and Limitless

107.   Plaintiff repeats each and every allegation of the Complaint.

108.   Plaintiff Ray Henderson Music Co., Inc. claims that Defendants Google, Valleyarm, and Limitless have unlawfully reproduced, distributed, and imported unauthorized recordings embodying the Subject Compositions including, but not limited to, the recordings identified in Exhibit B by the methods identified herein, and/or have unlawfully directed or authorized this activity.

109. Defendants have thereby willfully infringed, and are continuing to infringe, Plaintiff's copyrights in the Subject Compositions in violation of the Copyright Act.

## Prayer for Relief

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendants, jointly and severally, as follows:

1. A declaration that Defendants have infringed Plaintiff's copyrights in the Subject Compositions in violation of the Copyright Act;

2. A declaration that each of Defendants' infringements was willful;

3. At Plaintiff's election, an award of Plaintiff's actual damages, including Defendants' profits, or a separate award of statutory damages in amounts to be determined by the jury for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally;

4. A permanent injunction barring the Defendants from continued infringement of Plaintiff's copyrights in the Subject Compositions pursuant to 17 U.S.C. § 502; and

5. Reasonable attorneys' fees and costs of this action, statutory pre-judgment interest, and such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Local Civil Rule 38, and otherwise, Plaintiff respectfully demands a trial by jury on all issues so triable.

DATED:  January 22, 2020

Respectfully submitted,

By:        /s/ Allen Hyman
Allen Hyman (California State Bar No. 73371)
LAW OFFICES OF ALLEN HYMAN
10737 Riverside Drive
North Hollywood, CA 91602
Phone: (818) 763-6289
E-mail: lawoffah@aol.com

Brian S. Levenson  *Pro Hac Vice Pending*
SCHWARTZ, PONTERIO & LEVENSON, PLLC
134 West 29th Street, Suite 1006
New York, New York 10001
Phone: (212) 714-1200
Fax: (212) 714-1264
E-mail: blevenson@splaw.us

*Attorneys for Plaintiff*

COMPLAINT FOR COPYRIGHT INFRINGEMENT AND DEMAND FOR JURY TRIAL